156

The People of the State of New York, Respondent, *v.* John Harris, Appellant.

First Department, May 26, 1953.

*Gilbert S. Rosenthal* of counsel (*Nicholas Atlas, Matthew H. Brandenburg* and *Gilbert S. Rosenthal*, attorneys), for appellant.

*Charles W. Manning* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

Bergan, J. Defendant was convicted at the Court of General Sessions for murder in the first degree while engaged in the commission of a felony. (Penal Law, § 1044, subd. 2.) The jury recommended life imprisonment; the court followed the recommendation and imposed sentence accordingly.

The felony to which the homicide has been related is rape; and we address ourselves separately to the questions whether the homicide has been sufficiently established to warrant a conviction for causing the death involved; and whether, in turn, the underlying felony has been sufficiently established to warrant the view of the jury that the homicide was murder in the first degree.

There is independent proof in the record that the defendant and the deceased were drinking together on the evening of the crime in the presence of another woman who testified that defendant asked decedent whether " he * * * could * * * go home with her and get in her bed " and that " she told him no ".

She further testified to a stated intention by defendant to the deceased that he wanted to have intercourse with her on that night and there is some further proof of her objection or demurrer; and although the strength of her objection may be somewhat diluted as events progressed, nevertheless the record as we see it, is fairly open to the jury's judgment that there was a purpose to have intercourse on the part of the defendant and objection by the deceased.

When the two women and the defendant reached the home of the woman witness, the latter went inside and left deceased and defendant together. The dead body of the deceased was found some time later the same night on the fifth floor landing of the hallway in a house adjoining the one in which deceased lived. The entrances of the two houses are similar in appearance and design.

Autopsy disclosed that death was due to asphyxia by strangulation, fracture of the hyoid bone, and compression of the neck. When the body of the deceased was examined by the physician the panties worn by her " had been torn and were open, exposing the external genitals ". He added, " The body was still warm " and described the abrasions on the neck.

There is proof that defendant and decedent were together in the hallway of the house in which the body was found. A resident heard a " loud talking noise " and opening her door saw the deceased and the defendant in the hallway. At a time when the jury could have found that deceased was dead there is proof that defendant came to the apartment in which deceased lived in the building next door to the place of the crime and delivered some groceries with a statement to the witness that Alma (the deceased) had " sent you this ". Defendant's hands were shaking and trembling.

This is substantially the direct proof of the crime and of defendant's relation to it without any reliance on his admissions. A policeman testified that after his arrest defendant admitted that on the top floor landing in the building in which the body was found he had had " a tussle " with the deceased; that he " struck her " and " knocked her down " and that he " had intercourse with her " leaving her " there ". The inter-

relation of these events was made clearer on cross-examination. The policeman said that defendant told him " after " he had the tussle and knocked her down " then " he had intercourse with her.

Thus we have presented in the record a well-connected sequential chain of circumstantial and independent proof from which a rape may fairly be inferred and from which a homicide in connection with the rape could be found and this is cemented together solidly by the admissions of the defendant. The force exerted on the neck of the deceased is proof of the violence which constituted the homicide and it is also proof of the same and closely interrelated violence on which the rape rests. To effect death in order to effect intercourse is quite violence enough.

The expressed intention to have intercourse with the deceased and her expressed objection could be treated as proof in support of rape. The torn garment on the body; the exposed genitals are together evidence in the same direction.

That a jury might say fairly that the homicide was by this defendant's hand seems to us to be justified fully. Not only are the circumstances thus independently presented sufficient to attribute the homicide to defendant, but the admissions made by him to the police are certainly supported, as to the homicide, by the " additional proof that the crime charged has been committed " required by section 395 of the Code of Criminal Procedure.

We turn then to the question whether the proof of the underlying rape is sufficient to warrant a conviction for that kind of a homicide defined by subdivision 2 of section 1044 of the Penal Law, as murder in the first degree by a person " engaged in the commission of " or " an attempt to " commit a felony.

The arguable question arises mainly because it is hard to think of proof of rape without the testimony of the assaulted woman; and our accustomed way of thinking of this crime in the terms of her testimony is strengthened by the mandate of section 2013 of the Penal Law, that no " conviction " can be had " for rape " upon the testimony of the female defiled " unsupported by other evidence ".

The judicial history of the State shows a rigid interpretation of this section and insistence upon a full compliance with its terms. Illustrative of this consistent policy are *People* v. *Croes* (285 N. Y. 279 [1941]); *People* v. *Downs* (236 N. Y. 306 [1923]); and *People* v. *Page* (162 N. Y. 272 [1900]). The decision in

*People* v. *Plath* (100 N. Y. 590 [1885]) dealing with abduction, is in the same direction.

We have no doubt that in a prosecution for rape itself a conviction could be sustained by clear and adequate proof of the commission of the crime in all its elements without the testimony of the woman defiled. The statute does not prohibit such a conviction; it requires merely that if the woman testifies there be other evidence in the case to support a conviction. But that question is not now before us. Here the woman is dead and the conviction is not for rape but for murder.

Where the crime is not rape, but a rape is an incident to the crime, it has been held in one decision in this State which seems logically apposite and persuasive, that the testimony of the woman is not necessary. In *People* v. *Bates* (2 Parker Cr. Rep. 27 [1823]) Chancellor WALWORTH, then sitting as a circuit Judge, held that assault and battery with intent to commit rape, a felony, could be proved without the testimony of the person injured.

There was proof by other witnesses of the acts of the accused against the woman; but she herself, in the language of the Reporter, was " kept out of the way by the prisoner or his friends ". The rape, the court noted, was not the crime, and its relevancy was on the intention with which the assault was committed. This Judge WALWORTH thought provable " from the circumstances of the case ".

The purpose of the requirement of the statute that a conviction for rape be supported by " other evidence " in addition to the woman's proof is the danger, frequently stated in the cases which have dealt with the subject, from a charge very easy to be asserted by a woman and very difficult for a man to disprove. There must be some reliable and independent proof that the crime itself occurred. The provision is different in detail, but markedly similar in function, to the requirement of section 395 of the Code of Criminal Procedure which provides that a conviction cannot be had on the confession of a defendant " without additional proof " that the crime charged has been committed, because there is a parallel danger that a crime may be confessed, for one reason or another, that has not occurred.

When, in 1931, it was argued in the Court of Appeals in a felony murder case in which the homicide was charged in the course of the commission of a robbery that independent proof of the homicide but not of the robbery to support the confession made by the accused was insufficient to sustain a conviction, the court ruled that the " crime charged " was the homicide

and the statute was satisfied when this was independently proved in support of the confession which embraced a killing in the course of robbery. (*People* v. *Lytton,* 257 N. Y. 310.) The proof of the finding of the body and the fatal wound " sufficiently averted ", in the opinion of Judge Cardozo, the " danger that a crime may be confessed when no such crime in any degree has been committed ". (P. 314.)

The analogy is surely too strong to ignore here. The crime is the murder; the rape is a factor in the gravity of the murder; the dangers of an unfounded charge of rape unless the woman be corroborated are neither present nor are they relevant; and the statute which would seem to require the testimony of the woman and other proof besides to support a conviction for rape in our view does not bar this conviction for murder. We think the judgment well grounded.

The judgment should be affirmed.

Callahan, J. (dissenting). There was no confession by the defendant of the homicide, and, therefore, cases such as *People* v. *Lytton* (257 N. Y. 310) have no application. Nor do I have any doubt that, where other evidence of the essential facts is available, a conviction for rape may be obtained without the testimony of the woman ravished. But the defendant has been convicted of murder in the first degree as a felony murder and not of rape, though rape was the underlying felony.

In scrutinizing the evidence I think that the proof is insufficient to support a finding beyond a reasonable doubt that the defendant was the one who strangled the deceased, or that such strangulation occurred during the period between the inception and the consummation of the rape. There is no doubt that the decedent met her death by strangulation. The body of the deceased was found in the hallway on the fifth floor, at the same location where the defendant admitted that on the prior night he had sexual intercourse with her after a struggle, in which he struck her. From this we may suspect that the defendant choked the decedent in accomplishing his purpose to rape her. But mere suspicion is not enough for a jury to have found such fact. There must be evidence of a legally sufficient quality to justify a finding that the murder was committed by defendant and accompanied the rape. In this case any inferences to such effect rest on other inferences rather than evidentiary facts.

There was evidence that the defendant was the last person seen with the deceased. At that time, however, they were on the fourth floor. The defendant was heard to ask her to come upstairs, but she refused. They then headed downstairs. The

jury was required to infer that they had both gone upstairs later, and to infer further that in a struggle on the fifth floor the defendant choked the deceased to death in the course of or preparatory to a rape. And the inference must be drawn as to the coincidence of the crimes.

There was evidence of false statements by the defendant as to where he had left the deceased. These statements might indicate a consciousness of guilt, but guilt of what — homicide, or rape, or some other moral delinquency? In fact, the other evidence strongly indicates that the defendant did not know of the death of the deceased until the following morning, so that the false statements could not indicate consciousness of homicide.

The body of the deceased was found in a public hallway of a tenement house, six to eight hours after the defendant had left her. The medical examiner, who first saw the remains about 10:30 A.M., was unable to fix the time of death other than between two and ten hours prior to his first examination. I fail to find evidence in this record pointing to the defendant with sufficient certainty and exclusiveness of opportunity as to establish beyond a reasonable doubt that he was the one who committed the homicide. There is no proof establishing that the death of the deceased was accomplished after inception of the attempt to rape and before the completion or abandonment of that crime so as to constitute a felony murder (*People* v. *Ryan,* 263 N. Y. 298).

Accordingly, I vote to reverse the judgment of conviction and dismiss the indictment.

PECK, P. J., GLENNON and COHN, JJ., concur with BERGAN, J.; CALLAHAN, J., dissents and votes to reverse and dismiss the indictment, in opinion.

Judgment affirmed.