THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN HARRIS, Appelant.

Argued December 2, 1953; decided March 4, 1954.

*Gilbert S. Rosenthal, Nicholas Atlas* and *Matthew H. Brandenburg* for appellant. The evidence being insufficient to warrant a finding of guilt of this defendant beyond a reasonable doubt, the court erred in submitting the question of guilt, as to any degree of homicide, to the jury. (*Kotteakos* v. *United States,* 328 U. S. 750; *People* v. *Bennett,* 49 N. Y. 137; *People* v. *Weiss,* 290 N. Y. 160; *People* v. *Fitzgerald,* 156 N. Y. 253; *People* v. *Razezicz,* 206 N. Y. 249; *People* v. *Woltering,* 275 N. Y. 51; *People* v. *Suffern,* 267 N. Y. 115; *People* v. *Taddio,* 292 N. Y. 488; *People* v. *Joyce,* 233 N. Y. 61; *People* v. *Hirsch,* 254 N. Y. 570; *People* v. *Metelski,* 256 N. Y. 658.)

*Frank S. Hogan, District Attorney* (*Charles W. Manning* and *Richard G. Denzer* of counsel), for respondent. Defendant's guilt was established beyond a reasonable doubt. (*People* v.

*Willett,* 213 N. Y. 368; *People* v. *Place,* 157 N. Y. 584; *People* v. *Conroy,* 97 N. Y. 62; *People* v. *Birnbaum,* 208 App. Div. 476; *People ex rel. Perkins* v. *Moss,* 187 N. Y. 410; *People* v. *Johnson,* 185 N. Y. 219; *People* v. *Miller,* 247 App. Div. 489.)

DESMOND, J. On this appeal from a felony murder conviction, the question is as to the sufficiency of the proof. Pointing up that question is an able dissenting opinion in the Appellate Division in which the view is expressed that " the proof is insufficient to support a finding beyond a reasonable doubt that the defendant was the one who strangled the deceased, or that such strangulation occurred during the period between the inception and consummation of the rape ". (282 App. Div. 156, 160.) On the other hand, the majority opinion in the Appellate Division, with which we agree, carefully analyzed the record and found therein " a well-connected sequential chain of circumstantial and independent proof from which * * * a homicide in connection with the rape could be found and this is cemented together solidly by the admissions of the defendant ". (282 App. Div. 158.)

The theory of the prosecution and conviction was that defendant, early in the morning of November 12, 1950, on a hallway landing in a tenement building at 2407 Seventh Avenue, New York City, killed by strangulation, while engaged in raping or attempting to rape her, a woman named Alma Miller, who lived in the next door building, No. 2409 Seventh Avenue. The body of the woman, choked to death, was found lying on the fifth or top floor stair landing of No. 2407 at about seven o'clock in the morning. The time of death could not be scientifically established, but defendant and the woman had been seen together on the next lower, or fourth floor landing of that building about one o'clock that morning. While there was no conclusive proof of a sexual assault, the woman's underclothes were torn in a way to suggest just that. Defendant, after his arrest, made important admissions, to which we will refer again, that he had been in the building with Alma Miller, that they had a tussle, that he had pushed her, that she had fallen, and that he had then had sexual intercourse with her. Tied, as were those admissions on the trial, to other circumstantial evidence hereinafter

referred to, the totality of proof was weighty enough, in our opinion, to convince a jury of defendant's guilt, beyond a reasonable doubt.

Defendant had known Alma Miller for some months, and, earlier that night, was with her and with one of the prosecution's witnesses, Regina Joiner, in a barroom near Alma Miller's home, from which place the three walked to the witness' home, arriving there about midnight, during which walk, according to the witness, defendant asked Alma Miller to spend the night with him, she refused, and he said: " I am going to bed with you some place tonight ". Alma Miller had been drinking, and after her death her brain showed a " 3 plus " quantity of alcohol, enough, according to an expert witness, to make most persons show signs of intoxication such as staggering. After the witness Joiner had left defendant with Alma Miller, the latter two were next seen and heard at about one o'clock A.M., in the building at 2407 Seventh Avenue, on the fourth floor landing, one floor below the landing on which the body was found about six hours later. The witness Whitfield testified that, hearing some noise she came out of her fourth floor apartment, saw Alma Miller in the hallway, then defendant came down the stairs and asked the witness as to the whereabouts of " apartment seven ". The witness replied that there was no such apartment in that house, whereupon defendant asked Alma Miller to " come on up " and the latter answered: " That will be the roof. I'm no damn fool ". Defendant had a package in his hand at that time. Elsewhere in the proof, it is shown that Alma Miller had bought some groceries earlier that evening and that, about two o'clock in the morning of November 12th, defendant came to the next door apartment where Alma Miller lived, that he was " shaking ", that he handed to another woman who lived there a paper bag containing groceries saying that Alma had sent it, that defendant then asked for a man, one Dixon with whom Alma Miller lived at the No. 2409 Seventh Avenue apartment, saying that "Alma's downstairs, and I can't get her to come upstairs", that defendant and Dixon went downstairs and a few minutes later Dixon came back alone and said that Alma was not down there, and that, later that morning, defendant twice phoned this witness, asking how Alma was feeling. We think these

activities of defendant justified a conclusion that he was attempting to conceal his guilt (see *People* v. *Willett*, 213 N. Y. 368, 386; *People* v. *Place*, 157 N. Y. 584, 598).

Now let us go back to the occurrences at 2407 Seventh Avenue. The witness Whitfield, who saw defendant and Alma Miller on the fourth floor landing and heard their conversation, saw them, then, start downstairs. Another tenant whose apartment was on the fifth floor of that building, heard noises in the fifth floor hallway about one o'clock that morning, and about seven o'clock discovered the body on that stair landing. It would seem that defendant or Alma Miller, or both of them, had thought that they were in No. 2409, the identical-in-appearance next door tenement where the Miller woman lived. The testimony of the witness Whitfield had defendant and the victim starting downstairs from the fifth floor after the conversation she related, but the witness Green heard noises on the fifth floor landing about that same time and, as we shall see, defendant's own admission to the police was that he had a tussle and intercourse with Alma Miller on the fifth floor landing at the No. 2407 building.

Two detectives testified to oral statements made by defendant, while in custody, several hours after the finding of the body. Substantially, they were to this effect: defendant first said that when he and the Miller woman came to her apartment house she was too drunk to get upstairs and that defendant went up and got Dixon but that, when he and Dixon came down to the building entrance, Alma was gone; later, however, defendant told the detectives that he had been on the fifth, or top floor landing of 2407 Seventh Avenue, with Alma, that they had a tussle, that he pushed her, that she fell to the floor, that he then had intercourse, that he left her there and went next door to get Dixon, but that he did not grab the woman's throat, or rape her, or tear her underclothes. While making these statements to the detectives, defendant admitted that he was misleading Dixon when he brought Dixon downstairs for the supposed purpose of helping Alma who, as defendant falsely told Dixon, was at the entrance to No. 2409, too drunk to walk upstairs. Defendant, when he staged that incident and took Dixon downstairs for that feigned purpose, knew, according to his admissions to the detectives, that Alma Miller was lying on an upstairs floor in the building next door.

About 3:40 o'clock on the afternoon of the day the body was found, a question-and-answer statement was taken from defendant by an assistant prosecutor, and reduced to writing. In that interview defendant told the questioner that he had been with Alma in the building at No. 2407, and had had intercourse with her on the floor above the floor at which they had been told by some woman tenant that there was no apartment numbered seven in that building. During that questioning, defendant denied that he had tussled with Alma, but said that she had fallen downstairs after the intercourse, that when he left her he knew she had been hurt, and that he had picked her up and '' leaned her in the corner ''. This question-and-answer statement is confused in places, and it is, of course, not a '' confession '' of the crime of which defendant was convicted, but it does contain the important admissions that defendant struggled with the woman and that she fell, and that they had sexual congress at the place where she was later found, and that afterwards she '' couldn't move ''.

Defendant testified at the trial, accusing police officers of threatening him and beating him to make him talk, but these charges were denied and made out no more than a question of fact for the jury. In his trial testimony, defendant said that he had been with the deceased in two barrooms that evening and later had been with her in 2407 Seventh Avenue, that she told him she lived in that building in apartment seven, and that he had inquired for apartment seven. At the trial, he denied having sexual intercourse with Alma Miller and said that she had fallen on the stairs, that he had helped her down to the front stoop, that because she could not walk alone he had gone up and gotten Dixon, but that Alma was gone when they came down. He testified that, before talking to witness Whitfield at the fourth floor, he had gone up to the fifth floor, alone, looking for apartment seven.

Let us now take up, specifically, the two questions as to which doubt was expressed in the Appellate Division dissent: first, as to whether the proof sufficiently shows that defendant strangled Alma Miller, and, second, as to whether the record sufficiently shows that the strangulation occurred during the rape or attempted rape. As to the strangulation, there is missing here,

as in many another circumstantially proven criminal case, any direct proof that defendant did the strangling. But he had made, after she had refused his demands, what amounted to threats that he would have intercourse with the girl, he admitted having a tussle with her, and that she fell to the floor, and that afterwards she could not walk. It is, of course, conceivable, that after defendant left the girl in the hallway, someone else came upon her and strangled her, but that is a possibility, merely, of the same kind present in many another affirmed criminal case. The question of law is not whether someone else may possibly have strangled her — it is whether the proof points logically to defendant's guilt and excludes, to a moral certainty, every other reasonable hypothesis, that is, whether the proven facts are consistent with, and point to, defendant's guilt and are inconsistent with his innocence (*People* v. *Weiss,* 290 N. Y. 160, 163; *People* v. *Taddio,* 292 N. Y. 488, 489). We see no break here in the chain of evidence which points to defendant, and to no one else. Unless we are to demand absolute or metaphysical certainty, in which event there never could be a conviction on circumstantial evidence alone, this proof meets the established test. Likewise, as to whether the killing was done while a rape or attempt to rape was being committed. That there was a rape (or attempt) is fairly inferable from this proof: defendant's threat, his tussle with the girl, her torn underclothes, her drunken condition, his statement that she "fell" to the floor before the intercourse. The trial court in his charge authorized the jury to find either rape by force or fear, or because of intoxication preventing resistance (Penal Law, § 2010). We think the proof justified such instructions. The autopsy report and defendant's statements show a high content of alcohol in deceased, and inability to walk or stand. As to whether the strangling was done while rape or attempted rape was underway, we must look to the same proof. There was a tussle, there was resistance, the victim's clothes were torn open, there was intercourse, she was strangled to death. At one time or other, defendant really admitted everything except the actual physical fact of strangling. His demeanor and actions immediately afterwards and some hours later showed that he was troubled about what he had done and was trying to conceal

it. His character was such that he in all probability was not merely being solicitous, when he made the inquiries as to Alma's condition, but that he was gravely concerned about a grave criminal act.

We see no substance in defendant's lightly mentioned argument that error was committed in sending to the jury the common-law homicide theory, and the degrees thereof, as well as felony murder. Since the jury found guilt of felony murder only, in a clearly stated verdict, it follows that defendant was not prejudiced by the submission of other charges, even though the submission of those others may have been (we express no opinion on this) erroneous. We have in mind that this judgment, affirmed by the Appellate Division, leaves open to us not the question of weight of evidence, but the question of whether the proof was such as could convince the jury of defendant's guilt, beyond a reasonable doubt. We think it was sufficient.

The judgment should be affirmed.

LEWIS, Ch. J., CONWAY, DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur.

Judgment affirmed.