Bergan, J.
Defendant Transamerioan Freight Lines’ truck, driven by defendant Carbone, was stopped by a Port Authority police officer September 8, 1966 .as it was about to enter .the Holland Tunnel. On examining the shipping documents, it was found the bill of lading .specified that in the cargo were 15 drums of ethylene oxide weighing 10,038 pounds.
In this prosecution under a New York statute (Vehicle and Traffic Law, § 380) for failure to mark a warning on the outside *730 of a .truck carrying a “ dangerous article ”, two problems arise : (a) whether a case has been made out under the statute; (b) whether the statute occupies a field pre-empted by Federal lav/.
The statute (§ 380, subd. 1) defines a dangerous article, among other things, .as including a flammable liquid, i.e., one which “ gives off flammable vapors (as determined by flash point from Tagliabue’s open cup tester, as used for test of burning oils) at or below a temperature of eighty degrees fahrenheit ”.
It further provides (subd. 3) that it “ shall be unlawful ” to transport ‘ ‘ any dangerous article without conspicuously marking or placarding any motor vehicle engaged in such .transportation on each side and on the rear thereof with the word ‘ dangerous ’ or the common or generic name of the substance transported or its principal hazard ”.
The officer looked at the cargo and saw fifteen 50-gallon drums. There were red labels on the drums of a type prescribed by Interstate Commerce Commission regulations for liquids. One stated ‘ ‘ CAUTION ’ ’ .and gave certain directions in respect of safety. There were also tags on the drums stating ‘ ‘ Ethylene Oxide, 99% pure ”. One of the tags had a long list of precautions and, among other things, said: ‘ ‘ Danger: Extremely flammable ”.
No chemical test was made of the actual contents of the drums. The People proved that no warning or other notice of the contents of the truck’s cargo appeared on the outside of the truck. No proof was offered by the defendants.
A case prima facie has been made out establishing this truck was carrying over 10,000 pounds of ethylene oxide. The bill of lading said this. A physical inspection of the outside of the drums showed this .substance was noted as being in .the drums. Tags attached confirmed this; the warning labels required by ICC regulations added to the confirmation.
A chemist for the Port Authority, qualified ,as an expert, testified that, ethylene oxide has a flash point of minus four degrees Fahrenheit. This is greatly below (i.e., 84 degrees below) the minimum flash point prescribed in the statute (§ 380, subd. 1).
The direct proof is that the truck was not marked as required by law and the circumstantial evidence sustains a case prima facie that the cargo consisted of a dangerous article of the prescribed weight. (See People v. Wachowics, 22 N Y 2d 369, and *731 its counterpart, People v. Cleague, 22 N Y 2d 363; People v. Leonard, 8 N Y 2d 60.) The record meets all the classic requirements for a sufficient circumstantial case in People v. Harris (306 N. Y. 345, 351).
Appellants argue also that Congress has so occupied the field of regulation of interstate shipment of dangerous material that subdivision 3 of -section 380 of the Vehicle and Traffic Law is invalid as in conflict with Federal laws. A comparison of the Federal -and the State laws in relation to -safety shows that they are quite harmonious and have the same objectives. The specifics are left to the regulations of the Interstate Commerce Commission (U. S. Code, tit. 18, § 834).
The regulations are almost literal copies of the New York statute (Code of Fed. Beg., tit. 49, §§ 73.115, 77.823). In dealing with prosecutions the Federal statute (§ 834, subd [f]) proscribes knowing violations. The State -statute does not require the violation to be “ knowing ” and provides for penalties as malum prohibitum.
This is not the kind -of a conflict between Federal and State legislative policy in the same area which invalidates a State statute. It could scarcely be doubted that this record would sustain a conviction under the Federal statute. That these defendants, with this kind of a bill of lading and -a cargo -specifically marked as being dangerous and inflammable, could be thought to have carried the ethylene oxide without knowing it, is a remote possibility. In .this kind of a situation 11 knowingly ’’ plays no practical role.
Cases such as Castle v. Hayes Frgt. Lines (348 U. S. 61), on which appellants heavily rely, turn upon real -and not theoretical intrusion of a State on federally regulated interstate commerce. The -suspension of the operating rights of interstate carriers on State roads for repeated violations -of weight regulations was the issue there. These suspensions were regarded by the court as the disruption of a federally authorized activity.
But certain powers -of regulation remain to the State in providing for safety on its highways consistent with Federal interstate regulations (Maurer v. Hamilton, 309 U. S. 598; cf. South Carolina Highway Dept. v. Barnwell Bros., 303 U. S. 177).
"When State and Federal regulatory statutes have the same purpose and are harmonious, as the -statutes regulating danger- *732 ■eras substance in transit certainly are, the State is not ousted of jurisdiction because the United States has also acted (California v. Zook, 336 U. S. 725).
State and Federal regulations in .such a .situation as this one may be deemed to “ have their separate spheres of operation ” (Union Brokerage Co. v. Jensen, 322 U. S. 202, 208). In 1963 the court cited the principle of Zook with approval in another context (Colorado Comm. v. Continental Air Lines, 372 U. S. 714,722).
The judgment should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Breitel and Jasen concur.
Judgment affirmed.