■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EARL WILLIAMS, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. REGINO SERRANO, Appellant.— Judgments, Supreme Court, New York County,

rendered on March 26, 1971, convicting defendants, after a jury trial, of the crime of murder (Penal Law, § 125.25, subd. 1), affirmed. In affirming, we are not unaware of *People* v. *La Belle* (18 N Y 2d 405) cited by the dissent, but we find the factual analysis of the record compatible with guilt and inconsistent with innocence; and the jury, under a proper charge, found defendants guilty. In our collective judgment, the convictions were bottomed upon a legal sufficiency of circumstantial evidence: their presence at the scene, the proximity of the corpse to the street entrance doors, identification, the fact of fleeing, that a bullet had been fired past the umbrella, possessed by Serrano, but claimed by Williams, the inconsistent statements and false alibis — these accumulated layers of factual incrimination exclude every reasonable hypothesis other than the defendants' guilt, and warrant the jury's verdict. (*People* v. *Harris*, 306 N. Y. 345, 351–352.) Concur — McGivern, J. P., Nunez, Capozzoli and Macken, JJ.; Murphy, J., dissents in the following memorandum: I cannot vote to affirm these common-law murder convictions since I find the record before us wholly insufficient to support a verdict of guilt. While it is of course true that we cannot demand of the prosecutor "absolute or metaphysical certainty" of a defendant's guilt (*People* v. *Harris*, 306 N. Y. 345, 351), a conviction predicated solely on circumstantial evidence must still exclude to a moral certainty the hypothesis of his innocence. (*People* v. *La Belle*, 18 N Y 2d 405, 412.) We recently restated this ancient, but still applicable rule, as follows: "In determining a question of fact from circumstantial evidence * * * the hypothesis of * * * guilt should flow naturally from the facts proved, and be consistent with them all * * * [and] * * * The evidence must be such as to exclude, to a moral certainty, every hypothesis but that of * * * guilt * * * [and] * * * be inconsistent with * * * innocence." (*People* v. *Powell*, 39 A D 2d 531, quoting from *People* v. *Bennett*, 49 N. Y. 137, 144–145.) In my view the evidence adduced falls short of the foregoing standard. Defendants were observed by an off-duty probationary patrolman at about 2:15 A.M. walking casually from a courtyard of a building located on Valentine Avenue in the Bronx shortly after three shots were heard. They were also seen walking on the avenue by a resident of a nearby building through her fifth floor apartment window. Although this witness could not see the faces of these defendants, she positively identified them later in a police patrol car as the same two men she had previously seen. She later confirmed such identification in a precinct "show-up" and from photographs shown to her a few days before trial. After passing defendants on the street, Officer Hudson entered the courtyard and saw the decedent, through the glass front door of the building, lying in a pool of blood. After watching defendants turn eastward on 183rd Street, Hudson called for assistance and defendants were shortly thereafter apprehended while, according to them, waiting for a bus. Before they were given any *Miranda* warnings, defendants were stopped and frisked and questioned about their activities that evening. Both accounted for their time before meeting in a bar. One of the arresting officers testified that he saw blood on defendants' clothing. Defendant Williams assertedly replied that he had been "shooting up" and that the blood had fallen on his clothing when he shook his arm. In an apparent effort to refute this explanation, the officer testified that he examined Williams' arms and found no scabs, blood or fresh needle marks. It may be parenthetically noted, in this connection, that about a week later (during which time Williams was in constant police custody) a Narcotics Addiction Control Commission report disclosed that there were multiple old and fresh tracks, and three fresh needle marks, on Williams' arms. A chemical analysis of the blood stain found on

:defendants' trousers was inconclusive. However, a police department expert in the field of criminalistics testified that some 15 months after Serrano's umbrella was confiscated by the arresting officers he tested it and opined that a firearm had been discharged one inch away from the parasol. Defendants produced a firearms consultant who asserted that the wounds allegedly inflicted could not have been fired from next to the umbrella if discharged from the angles described by the medical examiner. It was further revealed at the trial that decedent was found still in possession of over $100 in cash and several credit cards; and that defendant Williams had 41 cents in his possession (which was stipulated to then be sufficient to cover the bus fare of both defendants) when he was admitted to the Bronx House of Detention the day following his arrest. Despite extensive searches conducted of the surrounding area, the murder weapon was never found. On essentially this evidence, defendants were found guilty of causing the death of another while " acting in concert ". Viewed in its most favorable posture the People's evidence conclusively established that defendants were near the scene of a homicide. Beyond that, however, the prosecution's case is bottomed on assumption, supposition and inference on inference. While the coincidence of time and place may suffice to create suspicion, it is legally insufficient to support a common-law murder conviction. In short, on the record before us, and nothing has been called to my attention to indicate otherwise, it cannot be said that the guilt of these two defendants has been established to a certainty; or that the evidence as a whole is inconsistent with their innocence, excluding to a moral certainty every other reasonable hypothesis. (*People* v. *Cleague,* 22 N Y 2d 363.) Since I believe the People have failed to sustain their required burden of proof, I find it unnecessary to review defendants' other assignments of error involving asserted prosecutorial misconduct and errors by the trial court. Accordingly, the judgments of conviction appealed from should be reversed and the indictment dismissed.