35 N.Y.2d 783 (1974)
The People of the State of New York, Respondent,
v.
Earl Williams and Regino Serrano, Appellants.
Court of Appeals of the State of New York.
Argued October 7, 1974.
Decided November 14, 1974.
Edward A. Meilman and Robert Kasanof for Earl Williams, appellant.
Sidney H. Stein and Robert L. Laufer for Regino Serrano, appellant.
Mario Merola, District Attorney (Daniel J. Sullivan of counsel), for respondent.
Chief Judge BREITEL and Judges GABRIELLI, JONES, WACHTLER, RABIN and STEVENS concur in memorandum; Judge JASEN dissents and votes to affirm in a separate opinion.
MEMORANDUM.
To sustain a conviction based exclusively on circumstantial evidence the facts from which the inference of the defendant's guilt is drawn must be established with certainty, must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis (Matter of Cleague, 22 N Y 2d 363, 365-366). We agree with the conclusion *784 of the dissenter at the Appellate Division, Mr. Justice FRANCIS T. MURPHY, JR., that the evidence in this record was not sufficient to meet this standard.
On this disposition of the appeal we do not reach defendants' other contentions.
The orders of the Appellate Division should be reversed and the indictment dismissed as to both defendants.
JASEN, J. (dissenting).
The issue is whether the circumstantial case against the defendants was sufficient, as a matter of law, to establish guilt beyond a reasonable doubt. I conclude that it was, and, accordingly, would affirm the judgments of conviction.
Shortly after 2:00 A.M., on September 18, 1969, Jeremiah Sullivan was shot three times in the hallway of his Bronx apartment at 2340 Valentine Avenue. The fatal shots were heard by at least three persons. Frederic Hudson, an off-duty probationary patrolman, observed two men, later identified by him as the defendants, walking from the courtyard at 2340 Valentine Avenue within seconds after the last shot was fired. Patricia Lane, a resident at 2335 Valentine Avenue, also, within seconds of the shooting, observed two men, subsequently identified by her as the defendants, about 20-25 feet from the 2340 Valentine Avenue address. And Bea Schatzkin, a tenant at 2340 Valentine Avenue, again within seconds of the shots being fired, viewed the main floor hallway through the peephole of her apartment door and observed the victim lying prostrate on the floor of the empty hallway in front of the main entrance doors.[1]
After hearing the shots, Officer Hudson crossed to the east side of Valentine Avenue and continued walking toward the 2340 address. The defendants, proceeding at a casual pace, walked past the officer. Upon entering the courtyard at 2340 Valentine Avenue, Hudson observed the victim, bleeding from the head, lying on the floor in the hallway near the entrance door which was smeared with blood.[2] Returning to the street, he observed the defendants turning onto 183rd Street, proceeding *785 in an easterly direction. Hudson then called for assistance and within minutes a patrol car responded.
Furnished with a description by Hudson, the responding officers proceeded after the defendants. As their patrol car approached 183rd Street and Third Avenue, they observed two men, later identified as the defendants, running over the Park Avenue Bridge. The officers exited the patrol car, approached the defendants, who then had slowed to a walk, stopped and frisked them. Defendant Serrano was clutching a closed umbrella belonging to defendant Williams. It was later determined that a weapon had been discharged in close proximity to the parasol. Williams exclaimed that the two had not done anything but were merely waiting for a bus.[3] Asked where they were coming from, Williams replied "a bodega". Serrano answered that he had been at his cousin's house. Williams then interjected that they had both been at a Park Avenue bar. Serrano agreed. Blood was observed on defendants' clothing, Williams explaining, and Serrano affirming, that he had been "shooting up" and had gotten blood on his and Serrano's clothing. One of the arresting officers testified that after checking both of Williams' arms, he found no fresh needle marks, blood or scabs. However, a report prepared by the Narcotics Addiction Control Commission after a physical examination one week later (during which time Williams was in police custody) noted multiple old and fresh tracks and three fresh needle marks on both arms. Chemical analysis of the blood stains on defendants' clothing revealed that the blood was human blood, but was otherwise inconclusive. The murder weapon was not found.
At trial a defense witness, Samuel Leon, the proprietor of a grocery store on East 183rd Street near Park Avenue, testified that he kept the store open 24 hours a day and that Williams had been with him at the store from about 11:00 P.M. the preceding evening until about 2:00 A.M. on September 18. A firearm consultant testified for the defense that given the angle of the victim's head and chest wounds and the "cylinder and muzzle flash" pattern on the umbrella, it was not possible for a weapon discharged next to the umbrella to have inflicted the fatal wounds.
*786 In rebuttal, two police officers testified that in the early morning hours of September 18, they observed the Leon grocery store to be closed, the lights out and the protective gate in place.
On this evidence, the jury was privileged to conclude beyond a reasonable doubt that the defendants, acting in concert, intentionally caused the death of the victim. The facts proved point logically to defendants' guilt and exclude to a moral certainty every reasonable hypothesis but guilt. (People v. Harris, 306 N.Y. 345.)
There are here no gaps in a well-connected sequential chain of circumstantial evidence. The defendants were positively identified by two witnesses who observed them leaving the scene of the crime within seconds after the fatal shots were fired. (Compare People v. Woltering, 275 N.Y. 51, 60, where a fatal flaw in the People's case was a failure of proof placing the defendant at the scene of the crime.) The victim's body was found close to the entrance door of the 2340 Valentine Avenue address which could be opened only from the outside with a key and which was smeared with blood. No other persons were observed in the hallway immediately after the shooting and there was no rear exit or stairs leading to the basement from the ground floor level where the victim's body was found. The inference is compelling that the assailants fled through the front courtyard to Valentine Avenue where the defendants were observed seconds after the shooting occurred. The umbrella, possessed by Serrano and claimed by Williams, bearing "cylinder and muzzle flash patterns" caused by the discharge of a weapon in close proximity, and the presence of human blood on their clothing are further links in the chain of circumstantial evidence connecting the defendants to commission of the crime. Also, the fact of fleeing, the false alibi of Williams, the assertion of inconsistent or false explanations for their whereabouts and for the presence of fresh human blood on their clothing, all suggest consciousness of guilt and concert of action bolstering other circumstances, the totality of which points strongly to defendants' guilt. (See People v. Leyra, 1 N Y 2d 199, 208-210; People v. Cathey, 38 A D 2d 976.)
For the reasons stated, I would affirm the judgments of conviction.
Orders reversed, etc.
NOTES
[1] The testimony at trial established that there was no exit at street level to a rear courtyard, nor were there any stairs at this level leading to the basement.
[2] The door could be opened from the outside only with a key.
[3] It was established at trial that the defendants had 41 cents in their possession, which at that time was sufficient to cover the bus fare of both men.