■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM WASHINGTON, Appellant.—Appeal from a judgment of the County Court of the County of Albany, rendered May 6, 1975, upon a verdict convicting defendant of the crimes of felony murder and robbery in the first degree. On August 7, 1974, a white male, one William Bogdanowicz, was found face down on the stairwell of the ninth floor of a public housing project located at No. 20 Rensselaer Street in the City of Albany. He was dead. About five hours later two Albany detectives went to defendant's home and he, along with his sister, willingly accompanied the officers to the Arbor Hill Neighborhood Police Office. Prior to any questioning, the defendant, then 16 years old, was given the *Miranda* warnings and waived them. Because preliminary questioning disclosed that defendant's story failed in certain essentials to agree with a statement given previously by a codefendant, he was removed to the Division Two Police Facility at about 11:30 P.M. where he was again advised of his rights, including the right to have counsel present at any interrogation, and he again waived such rights. After extensive questioning

the defendant agreed, at about 1:30 A.M. on August 8, 1974, to give a statement. The statement was typed, given to the defendant and several police officers who were present, and after one officer read the statement aloud, the defendant signed it. The total time in custody before the signing was about four hours. Thereupon, the defendant was charged with the murder and robbery of William Bogdanowicz. One Dale Berkeley was similarly charged. An Albany attorney, Daniel Dwyer, was assigned to represent Berkeley. During pretrial procedures Dwyer and defendant's counsel conferred together and discussed trial strategies. Thereafter, the two cases were severed for trial and Berkeley, represented by Dwyer, was tried first and convicted of only the first degree robbery count. Prior to defendant's trial, Attorney Dwyer was appointed Assistant District Attorney of Albany County. On this appeal the defendant assigns as reversible error the following: (1) defendant's motion to appoint a special District Attorney should have been granted; (2) defendant's oral and written statements should have been suppressed; (3) defendant's motion for dismissal at the close of the People's case and at the close of the whole case should have been granted; and (4) defendant's motion for a mistrial after the jury reported it was unable to reach a unanimous verdict on the charge of murder should have been granted. The trial court did not err in refusing to appoint a special District Attorney. Mr. Dwyer did not represent Washington, the defendant herein, but his codefendant. There was no reason to disbelieve the averments contained in Dwyer's affidavit in opposition to the motion, to the effect that he would not discuss the case with any member of the District Attorney's staff. There was no showing that the District Attorney's staff was prejudicially infected, and it would have been injudicious to disqualify the whole staff *(People v Loewinger,* 37 AD2d 675, 676, affd 30 NY2d 587). Next, the oral and written statements made by the defendant were properly admitted into evidence. The defendant does not deny that he and his sister voluntarily accompanied the detectives to the Arbor Hill station, nor does he deny that he was twice given the appropriate *Miranda* warnings, once before each of two sessions of interrogation, and that on each occasion he waived them. The defendant never requested the presence of his sister nor the assistance of an attorney while being interrogated. The whole process took only four hours. There is nothing in the record showing inquisitorial tactics or undue duress exercised by the police. No testimony was offered by the defendant at the suppression hearing. Defendant's only contention is that his age, lack of education and homosexual persuasion made him singularly vulnerable to oppression and, a fortiori, he must have been coerced into making the inculpatory statements. In the absence of any proof of how the factors of age, education and homosexuality, singly or by interreaction, did in fact result in constitutionally impermissible questioning, this contention must be rejected. It is the totality of the circumstances that control *(People v Carbonaro,* 21 NY2d 271), and the cumulative proof herein, beyond a reasonable doubt, is that the statements used against the defendant were voluntarily given. The defendant's third contention that the trial court erred in refusing to dismiss the indictment, both at the close of the People's case and the whole case, is rejected. The authorities *(People v Williams,* 35 NY2d 783; *People v Cleague,* 22 NY2d 363) cited by defendant are inapposite to the view urged upon this court. In this case, unlike *Williams* and *Cleague,* the defendant does not deny that he was at the scene of the crime. In fact, in his statement, received in evidence, he stated that he participated in the robbery, the underlying predicate for felony murder. He also admitted his connection with the codefendant, Berkeley. Therefore,

while it is true that the record is void of any direct proof as to the exact time on August 7 the victim died or as to the defendant, alone or in concert with Berkeley, having struck the blow which precipitated the victim's demise, the proof taken as a whole established beyond a reasonable doubt that defendant, alone or with Berkeley, caused the death of the victim. Any other reasonable hypothesis is excluded *(People v Cleague, supra)* because the totality of the evidence points to defendant's guilt *(People v Leyra,* 1 NY2d 199, 208–210). The evidence was more than legally sufficient to support the counts of the accusatory instrument (CPL 450.40, subd 1, par [a]). The case was properly submitted to the jury *(People v Underwood,* 43 AD2d 800). Finally, the trial court acted within its range of discretion in refusing to discharge the jury and accept a partial verdict after it was reported that one juror could not agree on the murder count but all jurors agreed on the robbery count. The court is without discretion and must terminate deliberations and accept a partial verdict only "If the possibility of ultimate agreement with respect to the other submitted offenses * * * is so small and the circumstances are such that if they were the only matters under consideration the court would be authorized to discharge the jury * * * the court must terminate the deliberation and order the jury to render a partial verdict". (CPL 310.70, subd 1, par [a].) However, where, as here, "If the court is satisfied that there is a reasonable possibility of ultimate agreement upon any of the unresolved offenses * * * it may * * * Refuse to accept a partial verdict at the time and order the jury to resume its deliberation upon the entire case." (CPL 310.70, subd 1, par [b], cl [ii]; cf. CPL 310.60, subd 1, par [a].) Here, although the jury had the case for about 16 hours, much of the time was consumed by the rereading of testimony and the charge, the jury having made six separate inquiries of the court. It was a capital case and the time spent deliberating by the jury was not excessive, nor was the court's refusal to accept a partial verdict an abuse of discretion *(People v Presley,* 22 AD2d 151, affd 16 NY2d 738). Neither did the court's direction to continue deliberations constitute coercion *(id.).* Unlike *People v Riley* (20 AD2d 599), relied upon by the defendant, but which is clearly inapposite since the jury in that case returned a verdict within five minutes of being told they were going to be sequestered for the night, this jury did not finalize its deliberations until two and one-half hours after they were directed to resume deliberations. Judgment affirmed. Koreman, P. J., Mahoney, Main, Larkin and Herlihy, JJ., concur.