The People of the State of New York, Appellant, v Vincent McLean, Respondent.

First Department, March 5, 1985

### APPEARANCES OF COUNSEL

*Abraham L. Clott* of counsel (*William E. Hellerstein,* attorney), for respondent.

*Mark L. Freyberg* of counsel (*Steven R. Kartagener* with him on the brief; *Mario Merola, District Attorney,* attorney), for appellant.

### OPINION OF THE COURT

Carro, J.

The order granting the defendant's motion to set aside the verdict of murder in the second degree, on the ground that the evidence was insufficient as a matter of law, should be affirmed. We are persuaded that the circumstantial evidence presented was insufficient to convict the defendant of acting alone or in concert with others to intentionally commit this crime.

The court below granted the defendant's motion and dismissed the case, relying largely upon *People v Williams* (35 NY2d 783, *revg* 41 AD2d 711 [on dissent of Murphy, J.]), which dealt with a very similar factual matter. In this case, all the People have established was defendant's presence near the scene of the crime. Although the defendant and at least two others were seen

coming down the stairs of the building where the decedent was found dead, there was no evidence presented whatsoever to support the jury's conclusion that defendant, either alone or acting in concert with others, intended to cause the death of the decedent or did cause the death of the decedent. A finding of murder in the second degree based on these facts had to be based on conjecture and speculation, both impermissible to support the jury's verdict.

The decedent, shot twice in the head and once in the back, was obviously the victim of an intentional killing. The jury could also draw the conclusion that the defendant was at the scene around the time of the shooting from his statement, "I am not the shooter" and "I am not telling". However, beyond that, the circumstantial evidence presented does not justify any further inferences by the jury implicating this defendant with the crime. No weapon was found, and it was unclear as to where the traces of blood on defendant's shoes came from. As Justice Levy correctly stated in his order dismissing the verdict, "There is no evidence to connect the defendant with others who may have been at the scene, nor was there any evidence to connect the defendant with the decedent, nor is there any evidence to show motive on the part of the defendant to shoot the decedent."

In a case based on circumstantial evidence the reasoning process of the jury is, of necessity, more complex; thus, close judicial scrutiny is necessary to ensure that the jury does not make inferences which are based not on evidence presented, but rather, on unsupported implications which are equivocal, at best. (*People v Kennedy,* 47 NY2d 196; *People v Benzinger,* 36 NY2d 29; *People v Karpowski,* 99 AD2d 118.) To sustain a conviction based on circumstantial evidence, the Court of Appeals has consistently held that the facts from which the inference of the defendant's guilt is drawn must (1) be established with certainty; (2) be inconsistent with his innocence; and (3) exclude to a moral certainty every other hypothesis. (*People v Way,* 59 NY2d 361; *People v Kennedy,* 47 NY2d 196, *supra; People v Benzinger,* 36 NY2d 29, *supra; People v Williams,* 35 NY2d 783, *supra; People v Cleague,* 22 NY2d 363; *People v Razezicz,* 206 NY 249; *People v Harris,* 136 NY 423.)

While we do not require the People to prove defendant's guilt to an "absolute or metaphysical certainty" (*People v Harris,* 306 NY 345, 351), the evidence presented here did not exclude to a moral certainty every other hypothesis except that of guilt. (*Compare, People v Williams, supra.*) There were only three people observed walking down the stairs from the scene of the

shooting, but there is no evidence as to how many others may actually have been at the scene or involved in the shooting. The evidence affirmatively established that it was possible to leave the building from the fifth floor without using the staircase or passing through the courtyard. Thus, it was possible the actual shooter was never observed entering or leaving the building, a reasonable inference not inconsistent with defendant's innocence. It is also quite possible the defendant was an unwilling witness to this crime. Obviously, mere presence at the scene of the crime is insufficient to convict defendant of acting in concert with the actual murderer.

The People argue the evidence, combined as a whole, at least established a connection between the defendant and two others, involving a plan to commit murder. This supposition, however, is based entirely on equivocal facts, and does not exclude a fair inference of defendant's noninvolvement in such a scheme. It was shown that another person was first seen descending the stairs, and then, upon exiting the building, hailed a passing cab. Subsequently, the defendant and another were seen descending the stairs and also exiting the building. The person observed with the defendant left him once outside the building, and the defendant was then seen walking in the direction of the waiting cab. The person in the cab was seen yelling (although it is unclear as to what) in the direction of the defendant, but the defendant began to flee upon seeing the police. According to the People, from these facts it can be concluded that the first man seen leaving the building was responsible for securing a "getaway cab", while the defendant and another completed the crime in question. The evidence of defendant's flight is alleged to be further evidence of defendant's involvement.

The People's interpretation of this scenario, while logical, cannot support a conviction. As noted, it has been consistently held that in order to support a finding that a homicide was committed with an intent or plan to commit death, the evidence must establish adequate proof of such a design by each person charged, and "must be shown to exclude other fair inferences." (*People v Monaco,* 14 NY2d 43, 45.) Without adequate proof of a shared intent with the principal actor, there is no community of purpose and therefore no basis for finding defendant acted in concert with the actual "shooter". (*Cf. People v La Belle,* 18 NY2d 405; *People v Monaco, supra.*) Here there exists no evidence of any preconceived plan or relationship between defendant and others to commit murder. Even combining the above facts with evidence of defendant's flight will not support the People's contention since flight is but another form of equivocal

circumstantial evidence. (*See, e.g., People v Yazum,* 13 NY2d 302, 304.) At best, all the evidence indicates is defendant's presence, along with at least two others, at or near the scene of a murder, and is, therefore, insufficient to support the People's contention that the defendant, or even the actual gunman, acted in concert with others to commit murder.

The soundness of Judge Levy's decision dismissing the case against the defendant becomes even more apparent after comparing the facts in this case to the facts and holding in *People v Ligouri* (284 NY 309) in which the Court of Appeals set aside the defendant's conviction of murder in the second degree despite the existence there of strong proof of such a criminal relationship. In *Ligouri,* it was held that the evidence established beyond a reasonable doubt that the defendant was with the actual gunman before the shooting, accompanied him to the place of the shooting, and then fled with him. One witness, although unable to identify either of the two defendants, testified to seeing two men pursuing and shooting a third man. Additional evidence established that the defendant anticipated violence, and that one of the defendants had stated after the incident, "We let him have it." In light of all this evidence the court still ruled that such proof, as here, "falls *far short* of establishing that he aided, abetted or otherwise participated in the homicide" (*supra,* at p 318; emphasis added).

Accordingly, a finding of murder in the second degree cannot be justified. Defendant's guilt, based on circumstantial evidence, has not been established to a moral certainty, and is, therefore, insufficient to support the People's contention that the defendant, either alone or acting in concert with others, caused the death of the decedent or intended to.

Order entered June 30, 1983 in Supreme Court, Bronx County (David Levy, J.), granting defendant's motion to set aside the jury's verdict, as a matter of law, and dismissing the indictment, should be affirmed.

KUPFERMAN, J. P. (dissenting). The standard for sustaining a conviction based exclusively on circumstantial evidence was enunciated in *People v Williams* (35 NY2d 783). "[T]he facts from which the inference of the defendant's guilt is drawn must be established with certainty, must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis".

McLean satisfied the first two parts of this standard. He is conclusively placed at the scene of the crime. He was seen by one witness through the peephole in her door. The blood on his shoes

conflicts with protestations of innocence. It is interesting to note that the blood was found on the top of his shoes, not on the soles. This is inconsistent with the claim that the defendant had only stepped in the blood after being arrested. The problem lies in excluding all other hypotheses to a moral certainty.

The primary incriminating facts against McLean are as follows: Defendant was at and/or near the scene of the crime. Blood was found on the top of his shoes. He ran at the sight of police officers. He had no alibi, instead giving unverifiable information to the police. He was also placed at the scene of the crime by two witnesses, based on his clothes and build, one of whom saw him through a peephole.

*Williams* (*supra*), heavily relied on by the defense, has a similar fact pattern. The victim had been shot and the defendants, two men, had been seen walking past the doorway where the crime had taken place. They were later found waiting at a nearby bus stop and arrested. Blood was found on the defendants' clothing, which they claimed came from "shooting up". One officer testified that he saw no fresh needle marks, which was disputed by the testimony that one week later, fresh needle marks were evident (and the defendant had been in custody in the interim). The defendants also presented testimony as to their whereabouts, although this testimony was disputed by other witnesses. *McLean* is distinguishable in that one witness specifically testified that she saw McLean at the crime scene, through the peephole, where Williams was only seen near the crime scene.

*People v Lagana* (36 NY2d 71) also has a similar fact pattern. The defendant had been involved in an altercation at a club. He was later seen double-parking his car in front of the club and getting out of the car. No one saw him shoot anyone, but shots were fired and one witness testified that the shots came from the defendant's direction. The defendant fled the scene and was later apprehended by the police. His car had bloodstains. The motive was held to stem from his altercation at the club. The court said: "The People's evidence establishes motive, places the defendant at the scene of the crime at the time of the shooting, supports the conclusion that he fired the shots, and demonstrates clearly defendant's flight from the scene. From all the evidence, the jury could have found beyond a reasonable doubt that the defendant did shoot the decedent with the requisite intent." (*People v Lagana,* at p 74.) In the instant case, McLean was placed at the crime scene. No one saw him shoot the victim, but blood was found on the tops of his shoes. His motive is

supplied by the fact that in the decedent's apartment, there was a setup similar to that used by drug or arms dealers. While this does not provide a clear-cut motive, it does eliminate most "reasonable" hypotheses. He was also caught clearly fleeing the area.

In addition, the defendant herein did not take the stand. This leaves the People's case as the only explanation for the events. The jury found the defendant guilty, so the inferences may be drawn against him.

In conclusion, there is a sufficient basis for reversing the decision below. The jury could be found to have excluded all other hypotheses to a moral certainty.

SANDLER and BLOOM, JJ., concur with CARRO, J; KUPFERMAN, J. P., dissents in a separate opinion.

Order, Supreme Court, Bronx County, entered on June 30, 1983, affirmed.