■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUSTIN SQUIRE, Appellant.—Judgment, Supreme Court, New York County, rendered January 16, 1975, upon a jury verdict, convicting defendant of grand larceny in the third degree, reversed on the law and in the interest of justice and the case remanded for a new trial. The People's case consisted primarily of testimony by a cabdriver who asserted that defendant instead of paying the fare, forcibly stole $30 while displaying and threatening the use of a knife. During the course of the People's presentation, defense counsel moved to have a statement, purportedly made by defendant in the presence of certain police officers subsequent to his arrest, admitted into evidence, but redacted to the extent it indicated that defendant may have committed prior crimes. The People vehemently objected to the admission of this statement: "You know my MO. When I rip off a cabbie I don't use a knife. I offer him a cool ounce of grass and make it with his money." They correctly pointed out that the statement was hearsay and self-serving and did not come under any of the recognized exceptions to the rule prohibiting admission of hearsay evidence. Where an indictment charges grand larceny by the taking of property from the person of another, larceny by false pretenses is not a lesser included crime and constitutes a complete defense to the charge if credited by the jury (see *People v Johnson,* 39 NY2d 364). Thus, under the circumstances herein the self-serving aspect of the statement resides in the assertion of the crime of larceny by false pretenses—a crime not charged in the indictment. Nevertheless, the trial court erroneously admitted the statement albeit in its entirety. The defense counsel rested without calling any witnesses and in summation stressed the issue of the credibility of the People's principal witness, the cabdriver, pointing out that he had admitted the past use of marijuana. During the course of their deliberation, the jury on three separate occasions inquired as to the definition of grand larceny in the third degree. In their initial request for clarification, they wanted to know under circumstances where a customer in a radio store hands the manager $30 in cash and he refuses to give the customer the radio or to

refund the $30 or even to acknowledge receipt of the money, whether the store manager has committed grand larceny in the third degree. This example demonstrates the jurors' concern with larceny by false pretenses and their confusion engendered by the court's erroneous admission into evidence of the hearsay self-serving statement of the defendant. After the jury's requests for clarification respecting the crime of grand larceny in the third degree and after being apprised that the jury had partially reached a verdict, the trial court simply reiterated the statutory definition of grand larceny in the third degree as charged, to wit, the taking of property regardless of its nature and value from the person of another (Penal Law, § 155.30, subd 5). No objection to the court's charge or response to the jury's requests was voiced by defense counsel. The jury acquitted defendant of robbery in the first degree and the possession of a weapon counts of the indictment while finding him guilty of larceny in the third degree. It must be concluded, therefore, that the jury did not believe the cabdriver's version of the crime insofar as he testified to a forcible taking of property from his person. The erroneous admission into evidence of defendant's statement, which we have characterized as self-serving, may well have constituted the basis, under these circumstances, for the jury's concluding that defendant was guilty of grand larceny in the third degree as charged in the indictment in the absence of the trial court's adequately explaining to the jury the material legal principles applicable to this particular case. To reiterate, the statement of the defendant which was self-serving in that it could be construed as an admission of a crime not embraced within the indictment and as a defense to the crimes charged, was erroneously admitted into evidence and presented to the jury. Assuming this evidence was properly before the jury and the jurors' perplexity occasioned by such evidence having been manifested, it is beyond cavil that the trial court was bound to explain to the jury the self-serving nature of such evidence in that it constituted a defense and to explain the difference between larceny by false pretenses and the crime of larceny in the third degree as charged. Failing to perceive its initial error in admitting the statement, the trial court compounded the error by failing to clarify the material legal principles in response to the jury's requests. The cumulative effect may well have been the conviction of defendant for a crime not charged. Patently, the interests of justice mandate that defendant be afforded a new trial. Concur—Murphy, J. P., Lupiano and Birns, JJ.; Silverman and Nunez, JJ., dissent in the following memorandum by Silverman, J.: The judgment of conviction should be affirmed. Even assuming that the Trial Judge could or should have been more helpful to the jury in explaining the law as to grand larceny in the third degree, we should not interfere in this case because defendant never objected or protested the court's action. The trial court is the forum in which the case with all its charges, evidence, defenses, and objections should be fully presented and urged. This is essential both from the standpoint of protecting the integrity of the trial process and the practical problem of avoiding the squandering of our judicial capacities on two trials of one case while many incarcerated defendants await one trial. For these reasons, it is important that counsel shall make known their objections or protests to the court's rulings or instructions in the trial court and when the trial court has, "an opportunity of effectively changing the same." (CPL 470.05, subd 2.) Here this was not done. The major error claimed revolves about the court's failure to answer the hypothetical question posed by the jury during its deliberations on a supposedly analogous state of facts. No Trial Judge should answer a jury's question as to the law applicable to a hypothetical

state of facts which is not before the jury, thus leaving it to the jury to reason, by perhaps questionable analogy, as to the law applicable to the case before it. Answers to such a hypothetical question can easily cause more harm than good. Thus the court's failure to answer the hypothetical question was clearly correct. Apparently both counsel agreed; neither one indicated any disagreement with the court's failure to answer the question. No doubt in these circumstances, some Trial Judges might then on their own initiative have said something like: "I won't answer this hypothetical question because that's not the case you have. But if you tell me what you are not clear about as to the law applicable to this case, I'll try to clarify it"; or even, "But I think I know what's bothering you. Does this help?" and then have gone into a discussion of the law applicable to grand larceny in the third degree, distinguishing it from larceny by false pretense (a rather dangerous course to take during jury deliberation if not requested by defendant). But surely failure by the trial court to volunteer this additional guidance—after jury deliberation had begun—is not so clearly an error as to warrant reversal when such volunteering is not even requested by the defendant. (Cf. *People v Streiff*, 41 AD2d 259, affd in part and revd in part *sub nom. People v Payne*, 35 NY2d 22.) "A criminal trial is not an obstacle course for the judge." *(United States ex rel. Konigsberg v Vincent, 526 F2d 131, 134.)* Indeed, for all we know defendant's attorney did not want any further explanation of grand larceny in the third degree. For further analysis might have led to the determination that there was no basis for submitting a charge of grand larceny in the third degree, in which case the jury (and the defendant) would have been faced with a choice of a verdict of guilty of robbery in the first degree, a class B felony, or not guilty. As a matter of trial tactics lawyers sometimes try to present the jury with such stark alternatives; but frequently they prefer to give the jury a possible middle ground, here, grand larceny in the third degree, a class E felony. The defendant's attorney in this case asked to have grand larceny in the third degree submitted to the jury (though no lesser count). In the area of submission of lesser included offenses, the statute gives particular weight to the failure of the defendant to object to the court's ruling (cf. CPL 300.50, subd 1, providing that any error respecting such submission of lesser offenses "is waived by the defendant unless he objects thereto before the jury retires to deliberate"). Here the court, in accordance with defendant's request, submitted the charge of grand larceny in the third degree. Although it may well be that the only logical choice was between guilty of robbery in the first degree and not guilty, the jury exercised its power "to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence." *(People v Rytel, 284 NY 242, 245; see, also, People v Mussenden, 308 NY 558, 562)* and found the defendant guilty of grand larceny in the third degree, for which he received a sentence not to exceed three years rather than the possible up to 25 years for robbery in the first degree. (Defendant is no longer incarcerated, being now on conditional release.) Now, after conviction and after defendant has had the benefit of his trial counsel's strategy, appellate counsel urges that the court should have given the jury clearer instructions, instructions which would presumably have eliminated the middle ground of grand larceny in the third degree. Defendant may do this now with impunity because he runs no risk that a retrial can result in a further sentence than he has already served. As Judge Fuld remarked in *People v Mussenden* (supra, pp 564–565): "Now that the issue has been resolved against the defense, appellate counsel—who represents Mussenden by assignment of this court and who has undertaken

his task with ability and imagination—may, with complete safety to appellant, speculate at length upon a whole a series of hypotheses * * * It is, of course, understandable why trial counsel did not argue in that way upon the trial before the case was submitted to the jury." The power of this court to reverse despite failure of defendant's attorney to protest a claimed error or defect occurring at the trial is given to us to be exercised "in the interest of justice," where the error or defect "deprived the defendant of a fair trial." (CPL 470.15, subd 6, par [a].) In a strikingly similar case our brethren in the Fourth Department refused to reverse for an improper answer to a jury's question that was not protested. *People v Streiff* (41 AD2d 259, *supra)* involved a trial of three defendants on a three-count indictment charging felony murder, reckless homicide, and criminally negligent homicide. The court charged the jury that no defendant could be found guilty of a different degree of homicide from another defendant. And in answer to an inquiry by the foreman in the course of the jury's deliberations, the trial court instructed the jury that they could not find one defendant guilty of one count and another defendant guilty of a different count. No exception was taken. The Appellate Division said (p 266): "Nor would we exercise our discretionary power to reverse the convictions, in the interest of justice, absent an exception or request. Alerted by the foreman's inquiry that the jury had a question about the propriety of verdicts of guilt on different charges against the various defendants, defense counsel nonetheless acquiesced in the court's instruction that such a disposition was not permissible. At oral argument of the present appeals counsel conceded that the issue was not raised and gave as reasons for this acquiescence that in their opinion the jury would not convict all three defendants of felony murder, but would acquit one or two of them under that count; and that if they requested a charge which would have permitted a conviction of a lesser degree, the jury would then find one guilty of the felony count and one or both of the others guilty of manslaughter or criminally negligent homicide, as indicated by the foreman's question. Defendants had the advantage of the strategic move which they employed. Because the outcome was not as they had anticipated, we should not now put them in the position in which they would have been had they chosen to take an exception. If an attorney chooses not to raise a point of law by excepting to the charge or making a request to charge 'because he believes it better for his client not to raise it, we would work fundamental changes in the adversary system if we determine he should have done that which he had decided advisedly not to do' ". Although the Court of Appeals reversed the conviction of one of the defendants in that case because of the County Court's denial of that defendant's pretrial motion for a severance, it affirmed the conviction of the other two defendants stating that "we agree with the conclusions reached by the Appellate Division." *(People v Payne,* 35 NY2d 22, 29–30.) Our colleagues who are for reversal state that the interest of justice mandates that the defendant be afforded a new trial. Of course there is not going to be a new trial. For such a trial can only result in either an acquittal or a reconviction of grand larceny in the third degree and no additional sentence. Neither of these possibilities justifies a retrial. This is not even a case where a defendant wants his honor vindicated by a retrial. His counsel urges not that the defendant is innocent, but that he is guilty of a different crime, not grand larceny in the third degree but petty larceny by false pretense. Our limited judicial, prosecutorial, and defense facilities should not be expended to vindicate so refined a sense of honor.