■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEPHEN GREGORY TROY, Appellant.—Kane, J. P. Appeal from a judgment of the Supreme Court at Trial Term (Crew, III, J.), rendered February 1, 1985 in Tompkins County, upon a verdict convicting defendant of the crime of attempted rape in the first degree.

Defendant was indicted for attempted rape in the first degree and criminal impersonation in the first degree. At the ensuing trial, the victim, Mary O'Donnell, testified that she was driving to her boyfriend's home after work at approxi-

mately 2:30 A.M., on July 21, 1984. As she was traveling along a rural road, O'Donnell noticed that a car behind her was flashing its lights. Believing that she was being stopped by the police, O'Donnell pulled over. After the other car pulled over behind her, defendant, who was the driver of the other car, approached O'Donnell's car and informed her that she had gone through a red light. When O'Donnell asked him for identification, defendant pushed down her partially opened window, reached through the opening and grabbed her. He punched her, snatched her car keys and opened the car door. Continuing to punch her, defendant dragged her from the car into a ditch alongside the road. While she struggled, O'Donnell screamed for help.

O'Donnell testified that once she was in the ditch, defendant ripped her shirt and bra and tugged at her pants. He stated that he wanted "sex" and exposed himself to O'Donnell. Defendant then suddenly left the ditch and returned to the roadway, ostensibly to turn off his headlights. At that point, David Warden, a nearby resident who had been awakened by O'Donnell's screams, arrived at the scene and confronted defendant. O'Donnell returned to the road and informed Warden that defendant had attempted to rape her. As defendant started to walk away from the confrontation, O'Donnell stated, "My keys, he's got my keys, where are the keys?" Defendant responded that they were in her car. Defendant then went to his car and drove away.

Immediately thereafter, Warden and O'Donnell drove in O'Donnell's car to the nearby home of her boyfriend and called the police. They gave the police the license number of defendant's car, which was traced to defendant's girlfriend. The police found defendant at his girlfriend's apartment. Initially, defendant denied being at the scene of the crime. However, he later admitted being at the scene but stated that he had seen O'Donnell's car parked on the road and stopped merely to see if he could help her. After taking the police to the scene of the crime, O'Donnell went to the emergency room of a local hospital where she received treatment for multiple contusions, abrasions and a broken nose.

Various police officers who investigated the incident testified as to their investigation and the finding of defendant's fingerprints on the window of O'Donnell's car. At the close of the People's case, defendant moved to dismiss the charges. The trial court denied the motion with respect to the attempted rape charge and granted the motion as to the criminal impersonation charge. The defense then presented its case. Defen-

dant testified, as stated above, that he had been present at the scene but had done nothing to O'Donnell. A number of defendant's friends testified as to defendant's good character. In due course, the jury found defendant guilty of the crime of attempted rape in the first degree. Defendant was sentenced to an indeterminate prison term of 3 to 9 years, and this appeal ensued.

Defendant contends that his guilt was not established beyond a reasonable doubt. Specifically, defendant contends that the conviction for *attempted* rape was not proper since no overt act carrying the event to within dangerous proximity was performed. O'Donnell, however, testified that her attacker punched her, dragged her from her car, tore open her blouse and bra, tried to pull down her pants, stated that he wanted "sex", and exposed himself to her. These acts were sufficient to constitute an attempt to rape *(see, People v Pereau,* 99 AD2d 591, *affd* 64 NY2d 1055). In addition, contrary to defendant's assertion, we find that the identification testimony was sufficient. We note that defendant's argument fails to take into account that there is no question but that defendant was present at the crime scene; he himself testified to that effect.

Defendant's primary contention with respect to the sufficiency of the evidence appears to be that the jury should have credited his testimony. Credibility of witnesses, however, is for the jury to resolve *(People v Cruickshank,* 105 AD2d 325, 331, *affd* 67 NY2d 625), and a review of the record, as detailed above, reveals that defendant's argument is without merit *(see, People v Pereau, supra).* In sum, the People presented sufficient evidence to prove defendant's guilt beyond a reasonable doubt.

Any error made by the prosecutor in summation was harmless, as was any error committed by the trial court in its supplemental charge on intent *(see, People v Crimmins,* 36 NY2d 230). In this regard, the record belies defendant's claim that the court failed to instruct the jury that it was not mandatory to infer intent. Further, the court did not err in its *Sandoval* ruling. We have examined defendant's remaining contentions and find them to be without merit. The judgment should, therefore, be affirmed.

Judgment affirmed. Kane, J. P., Main, Weiss, Mikoll and Yesawich, Jr., JJ., concur.