■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRUCE HAIMS, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Harrington, J.), rendered May 10, 1984, convicting him of murder in the second degree, manslaughter in the second degree, and attempted rape in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant admitted that he killed the victim by beating her over the head with a shillelagh. He admitted that after having spent some time with the victim at her parents' home, he began to fantasize about compelling the victim to submit to sexual intercourse. As the urge to fulfill this fantasy became greater, the defendant decided to commit a forcible rape.

The defendant confessed that he prepared to rape the victim as she was taking a shower. He approached the master bedroom, arming himself with the shillelagh, which he intended to use as an instrument in the enactment of his violent fantasy. He lay in wait in a hall alcove, saw the victim come out of the shower, approached her from behind, and then began to strike her repeatedly over the head. He continued unrelentingly, eventually causing the injuries which led to the victim's death, and only stopped because she was unconscious and covered with blood.

The defendant now argues that his savage beating of the victim was not "in the course of [or] in furtherance of" his

confessed attempt to rape her, so that the jury's verdict with respect to felony murder cannot stand (Penal Law § 130.35 [1]; §§ 110.00, 125.25 [3]). We disagree.

Penal Law § 130.35 (1) provides that

"[a] male is guilty of rape in the first degree when he engages in sexual intercourse with a female * * *

"[b]y forcible compulsion".

Penal Law § 110.00 provides that "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime".

In the present case, it cannot seriously be disputed that the defendant formed an intent to commit a rape in violation of Penal Law § 130.35 (1). Nor can it be disputed that by taking up a club, and by then using it to beat his victim into submission, he "engage[d] in conduct which tend[ed] to effect the commission" of the intended rape (Penal Law § 110.00). Therefore, there is no serious question that the defendant committed an attempted rape *(see,* Penal Law § 130.35 [1]; § 110.00; *see also, People v Pereau,* 64 NY2d 1055, *affg* 99 AD2d 591; *People v Bruce,* 162 AD2d 604; *People v Graham,* 151 AD2d 979; *People v Troy,* 119 AD2d 880).

The defendant's argument is that the evidence left the jury no alternative but to conclude that, prior to inflicting the injuries which actually killed the victim, he had "abandoned the idea of attempting to rape [the victim] in favor of an uncontrolled spasm of violence". Thus, the defendant argues that the homicide was not "in furtherance of" the attempted rape (Penal Law § 125.25 [3]), so that he is innocent of felony murder.

We have no hesitation in accepting the defendant's characterization of his conduct as being an "uncontrolled spasm of violence". However, we cannot accept the argument that, as a matter of law, the defendant's intent to commit rape (i.e. forcible sexual intercourse) had necessarily abated once his "spasm of violence" had begun. This argument rests ultimately on the premise that the intent to compel another person to submit to sexual intercourse is inconsistent with whatever state of mind it is that inclines a person such as the defendant to acts of excessive violence. We consider it more realistic to view the two mental states—intent to commit rape and intent to injure through violence—as entirely compatible.

We, therefore, cannot accept the premise, as our dissenting colleague in effect does, that at the time that the fatal injury

or injuries were being inflicted, the defendant had necessarily abandoned all intent to carry out his perverted fantasy. Whether the sequence of events was such that the fatal injuries were inflicted after, rather than before, the defendant had abandoned his confessed intent to rape the victim (assuming that this intent was in fact abandoned at any point prior to the victim's death) was clearly a question of fact for the jury. Unlike our dissenting colleague, we do not consider the jury's resolution of this question of fact to be against the weight of the evidence.

We have examined the defendant's remaining contentions, including those raised in his supplemental *pro se* brief, and find them to be without merit. Bracken, J. P., Kooper and Balletta, JJ., concur.

Harwood, J., dissents and votes to modify the judgment, on the law, by reversing the defendant's convictions of attempted rape in the first degree and murder in the second degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment, and as so modified, to affirm the judgment of conviction, with the following memorandum: I would have no difficulty voting to affirm a judgment rendered upon a verdict that the defendant was guilty of intentional murder, had the jury so found. The fact remains, however, that it did not do so and I cannot vote to affirm the apparent compromise verdict that the defendant is guilty of felony murder and attempted rape.

The People's theory at trial was that the defendant intended to have forcible sex with the victim, and that his striking her on the head with a club more than 25 times constituted an attempt to commit rape. However, viewing the evidence in the light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620, 621), I cannot agree that the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt of attempted rape by forcible compulsion (Penal Law § 130.35 [1]). As the majority points out, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). However, "[f]elonious intent alone is not enough, but there must be an overt act shown in order to establish even an attempt. An overt act is one done to carry out the intention, and it must be such as would naturally effect that result, unless prevented by some extraneous cause" *(People v Mills,* 178 NY 274, 284-285). "The law * * * considers those acts only as tending to the commission of the crime

which are so near to its accomplishment that in all reasonable probability the crime itself would have been committed but for timely interference" *(People v Rizzo,* 246 NY 334, 337). I do not agree that the repeated bludgeoning of the victim over the head with a wooden shillelagh would "naturally effect" the result proposed by the People (i.e., rape by forcible compulsion); nor was it "so near to [the] accomplishment [of rape] that in all reasonable probability the crime itself would have been committed but for timely interference" *(supra,* at 337). Aside from the defendant's erotic fantasies of frightening the victim into having sex with him, the record is devoid of evidence that the defendant did or said anything tending to effect a rape. Unlike *People v Pereau* (64 NY2d 1055) cited by the majority here, there was no extraneous event which interfered with this defendant's ability to carry out his original intent to rape his victim. In that case the victim, who was told by the defendant that he "wanted" her, was able to gain control of the knife which he held against her breast and thereby prevent him from completing his attempted rape. Likewise in *People v Bruce* (162 AD2d 604), the defendant's intended rape was interrupted by Housing Police. In *People v Troy* (119 AD2d 880) all of the defendant's overt acts were in furtherance of his statement that he wanted to have sex with his victim and he was only prevented from carrying out his intent by the fortuitous intervention of a passerby. The defendant in this case, on the other hand, made no statement to his victim that he planned to have sex with her, none of his overt acts—bludgeoning her 25 times with a shillelagh without making any sexual advances toward her—can conceivably be characterized as being in furtherance of his original admitted intent to forcibly have sex with her and, most significantly, there was no extraneous event which prevented the defendant from carrying out his intended rape.

It is apparent to me, based upon the evidence adduced at the trial that defendant had abandoned his intent to rape his victim and instead decided to bludgeon her to death. The jury which acquitted defendant of intentional murder had heard testimony from his psychiatric expert that the defendant had a psychosexual disorder and did not know what he was doing when he repeatedly struck his victim. They convicted him of the lesser included offense of manslaughter in the second degree. I agree that this conviction should be affirmed. However, the conviction of attempted rape in the first degree must, for the foregoing reasons, be reversed as must the felony murder conviction because the People did not prove that the

homicide was committed "in the course of" the crime of attempted rape *(cf., People v Joyner,* 26 NY2d 106, 109).