OPINION OF THE COURT
John M. Leventhal, J.
*954 Defendant stands charged of, inter alia, rape in the first and third degrees, sexual abuse in the first and third degrees, attempted rape in the first degree, criminal contempt in the first and second degrees, and attempted assault in the third degree. The court has written a separate decision sustaining the legal sufficiency of the grand jury indictment. This opinion explains the court’s rationale in sustaining the count charging the defendant with attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]).
Background
Defendant and complainant were in a relationship for 13 years and have a seven-year-old daughter together. In January 2006, complainant ended the relationship by moving out of the apartment they shared. On February 13, 2007, at defendant’s request, complainant, with their daughter, went to defendant’s apartment (her former apartment) to resolve issues regarding their relationship and their child. Complainant slept over that evening on a couch in the living room, and, in the morning, defendant is alleged to have raped her three times. Complainant had a rape kit performed and filed a police report later that day. Defendant, however, was not arrested until April 11, 2007. On April 12, 2007, an order of protection was issued against the defendant. It was extended six times.
On June 19, 2007, complainant, thinking defendant was not at home, went to pick up rent money, her daughter’s Medicaid information, and child day-care benefits from their former shared residence, as had been her habit. Defendant was in fact home. He locked the door behind the complainant and told her he wanted to have sex. Defendant told complainant if she did not take her clothes off, he would rip them off. Complainant tried to trick defendant by telling him to get a condom, and, when he did, she ran out the door and down the stairs. Defendant ran after her, held her down to the floor in the stairwell, and covered her mouth to prevent her from screaming. Neighbors heard the struggle and called the police, who arrived shortly thereafter. The act of restraining the complainant as she attempted to escape the apartment building is alleged to have constituted the crime of attempted assault in the third degree.
Discussion
It is manifestly evident from the allegations that it was defendant’s intent to have forcible sex with the complainant on *955 June 19, 2007. In fact, defendant was charged with attempted rape in the first degree (Penal Law §§ 110.00, 130.35 [1]). Penal Law § 110.00 provides that “[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.” It is equally clear from the grand jury testimony that defendant, in running after the complainant and restraining her as she tried to leave the apartment building, was acting in furtherance of his desire to rape her. A reasonable grand juror could believe that the defendant’s grabbing of the complainant, although perhaps not wishing to inflict physical injury in the classic sense, was restraining her in order to have forcible sex with her. This court notes that when one rapes another, by definition, one inflicts serious physical injury.
A person is guilty of assault in the third degree when, with intent to cause physical injury to another person, he causes such injury to such person (Penal Law §§ 110.00, 120.00 [1]). Physical injury is defined as the impairment of physical condition or substantial pain (Penal Law § 10.00 [9]). Although there are a plethora of New York state court decisions assessing the range of bodily injuries that constitute “impairment of physical condition” or “substantial pain,”[1] no appellate courts have found the act of rape to constitute a physical injury.[2] Despite the scarcity of case law on this point, many cases do show that rapes are often associated with other violent crimes and that rape victims often endure serious physical injury or death (see e.g. People v Harris, 306 NY 345 [1954] [defendant strangled a woman to death in the hallway of an apartment house while he raped her]; People v Pierce, 51 AD2d 634 [1976] [defendant took girl to a secluded shale pit, struggled with her, tore her clothing, attempted to rape her, and caused her death in an effort to silence her]; People v Streiff, 41 AD2d 259 [1973] [defendant and others took unconscious victim to a remote place despite her struggling and screaming, tore her clothing off, and then *956 discovered she was no longer breathing]). In People v Haims (171 AD2d 878, 879 [1991]), the Appellate Division, Second Department, “view[ed] the two mental states — intent to commit rape and intent to injure through violence — as entirely compatible” where the defendant beat his victim to death with a club before he admittedly had planned to rape her. The court’s conclusion enabled it to affirm a jury’s finding of felony murder because the death occurred during the commission of an attempted rape.
Numerous studies also emphasize the serious physical injuries that frequently accompany rape. Results from an article by Tjaden and Thoennes entitled Extent, Nature, and Consequences of Rape Victimization: Findings From the National Violence Against Women Survey (NVAWS), published in January 2006,[3] show that 32% of women were injured during their most recent rape as an adult, and 35% required medical treatment for their injuries. The United States Department of Justice, in its most recent National Crime Victimization Survey (NCVS),[4] found that in 82% of rapes or sexual assaults, the offender was the first to use force, and a weapon was used in 16.4% of incidents. The NVAWS and NCVS also show that most female victims, like the victim in this case, know their rapist. The rapists are typically current or former spouses, cohabiting partners, boyfriends, or dates.
New York’s felony murder statute provides some insight into the level of seriousness the legislature attributes to sexual assault crimes. Penal Law § 125.27 was amended in 1995 so that rape in the first degree, criminal sexual act in the first degree, and sexual abuse in the first degree constitute predicate felonies for first degree felony murder. One legislative goal of the 1995 death penalty legislation was to “deal with those crimes which most seriously affect society and the community as a whole” (People v Harris, 98 NY2d 452, 476 [2002], quoting Mem of *957 State Exec Dept, 1995 McKinney’s Session Laws of NY, at 1781). Therefore, the legislature determined that rape is one of the most potentially violent crimes and involves a substantial risk of physical injury.
New York’s justification statute also shows how seriously the crime of rape is viewed by the legislature. Penal Law § 35.15 (2) (b) permits the use of deadly force when a person reasonably believes that he or she is the victim of a forcible rape or forcible criminal sexual act. Other jurisdictions as well as the Model Penal Code also endorse this approach (see e.g. Mo Stat Ann § 563.031; Model Penal Code § 3.04 [2] [b] [1985]). That a rape victim is justified in responding with deadly force only emphasizes the legislature’s concern with the probability and seriousness of the perpetrator’s use of unlawful deadly force in an act of rape.
In addition to physical injury, rape victims experience devastating and enduring psychological harm. Rape is a recognized trigger of acute stress disorder and posttraumatic stress disorder and NVAWS reports that 33% of female rape victims received counseling as a direct result of their most recent rape. Nineteen and four-tenths percent of women surveyed also missed time at work, signaling that rape can have serious economic consequences as well.
Several jurisdictions (including Arizona, Louisiana, Michigan, New Jersey, New Mexico, North Carolina, Tennessee, and Texas) have held that psychological injuries or significant mental anguish qualify as serious injuries that can elevate the degree of crime with which a defendant is charged (Annotation, Sufficiency of Allegations or Evidence of Victim’s Mental Injury or Emotional Distress to Support Charge of Aggravated Degree of Rape, Sodomy, or Other Sexual Offense, 44 ALR5th 651). These jurisdictions are the first to change their laws to reflect the fact that nonvisible injuries resulting from sexual assault may be as traumatic and impacting as physical injuries.
Conclusion
The perpetrators of rape, as defined by Penal Law § 130.35 (1), manifest the intent to forcibly compel their victims to engage in sexual intercourse, and this use of force frequently leads to physical or mental injury. Although the Penal Law recognizes that rape can lead to violence, rape is not presently *958 included within the definition of physical injury. This court holds that rape is equivalent to a physical injury.[5]
In the present case, it is clear that the defendant intended to rape the complainant before she thwarted his plan. Therefore, the defendant attempted to cause the complainant physical injury and he was correctly charged with attempted assault in the third degree.

. See e.g. People v Henderson, 92 NY2d 677 (1999) (prima facie case made out where defendant showed he had been kicked in the legs and suffered painful contusions and swelling); Matter of Manuel G., 215 AD2d 558 (1995) (physical injury established by complainant’s testimony that he experienced pain, headaches, and blurred vision after being hit in the face with a lock by the defendant); People v Washington, 148 AD2d 952 (1989) (evidence that complainant’s jaw was swollen and caused him pain for two weeks was sufficient to establish “physical injury”).

. One trial court has held that the threat of rape amounts to a fear of serious physical injury constituting the crime of menacing (People v Jackson, 109 Misc 2d 582 [1981]).

. (National Institute of Justice, Publications, http://www.ojp.usdqj.gov/nij/ pubs-sum/210346.htm, cached at http://www.nycourts.gov/reporter/webdocs/ NIJ.htm). The survey was conducted from November 1995 to May 1996. A total of 8,000 women and 8,005 men age 18 and older were interviewed by telephone. Although rape is a gender-neutral crime, the NVAWS findings indicated that most rape victims are women and most rapists are men. Therefore, the figures referenced from this study correspond to female rapes.

. (United States Department of Justice, Bureau of Justice Statistics, Crime and Victims Statistics, http://www.ojp.gOv/bjs/cvict.htm#Programs, cached at http://www.nycourts.gov/reporter/webdocs/BJS.htm). Each year, data is obtained from a nationally representative sample of 77,200 households on the frequency, characteristics and consequences of criminal victimization in the United States. The data cited is from 2005.

. The court notes that the potential seriousness of physical injury associated with rape may even qualify it as a “serious physical injury” under Penal Law § 10.00 (10), defined as physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ. Intent to cause serious physical injury constitutes assault in the second degree (Penal Law § 120.05 [1]). Since the defendant was not charged with attempted assault in the second degree in the indictment, the court will not address this issue.